GORDON S. P. KLEEBERG, Appellant, *v.* JOSEPH N. SIPSER, Respondent.

88

(Argued May 25, 1934; decided July 3, 1934.)

*Harris Jay Griston* and *Lewis F. Glaser* for appellant.

*M. James Spitzer* and *Lorenz Reich, Jr.*, for respondent.

O'BRIEN, J. The action is for libel and the complaint was dismissed upon the ground that it states no cause of

action. Only a question of sufficiency of pleading is presented by this appeal.

Five alleged causes of action are set forth and they aver the following to be facts: Plaintiff is an attorney admitted to practice in this State and was retained by Louis Orlik, residing in London, to represent him here in certain business negotiations with his brother Alfred Orlik, a resident of New York. Defendant's interest, if any, in these negotiations does not appear from the complaint. During their pendency, defendant addressed five messages by cable and letter to plaintiff's client which are recited respectively in each of the five causes of action. The first reads: " Interview with Kleeberg useless in spite of your recommendation to give me satisfaction Kleeberg apparently favours lawsuit and insists receiving copy of contract which Alfred's lawyer refuses to give therefore I suggest you mailing promptly copy and your specific instructions to Kleeberg." The second: " I gained the impression that Kleeberg would rather see a fight that bring you and Alfred together * * *. It is obvious why Mr. Kleeberg wants to rehash the entire case. How can we consider K's (meaning plaintiff's) attitude impartial or as acting in good faith, when he threatens, because the contract was refused to him, that he will *now* advise you do nothing else but fight Alfred? (meaning Alfred Orlik). Who cares about his threat, the fact is that he broke off negotiations instead of having made efforts to bring about an understanding to save you and Alfred further lawyer expenses. He could serve better in a quarrel between two brothers if he would be guided by the fair and just points at issue. Your letter of Sept. 28th, expresses the intention of a friendly attitude and I presume it is your object, or at least your desire, to come to an understanding, whilst it is my belief that the ugly attitude of Kleeberg towards me was neither appropriate nor in accordance with your intentions. In view of the fact Kleeberg did not act

according to your wishes, I cabled you on Oct. 24th as follows: Interview with Kleeberg useless in spite of your recommendation to give me satisfaction Kleeberg apparently favors law suit and insists receiving copy of contract which Alfred's lawyer refuses to give therefore I suggest you mailing promptly copy and your specific instructions to Kleeberg." The third: " Mr. Kleeberg attached a new condition, which you did not mention in your letter to him, that, in exchange for this clarification, he would require a certified cheque for the payment of the first note and also here I agreed. After all appeared ready for a settlement, Mr. Kleeberg changed his mind again, and informed me that *he* will advise you not to sign the clarification, that he will draw up a different document, which Alfred should or must accept. You know quite well that Kleeberg's paper will not be acceptable to Alfred's lawyer, and there is no doubt of Kleeberg's object." The fourth: " Your instructions to Kleeberg proposing, modifying third paragraph of clarification should end all troubles and I also agreed immediate payment first note in exchange for such modified clarification but Kleeberg refuses carrying out your wishes. Kleeberg's attitude will cause litigation and large lawyer expenses for everybody unless you instruct him carrying out your wishes." The fifth: " Can arrange immediate payment both notes in exchange for clarification however the third modified paragraph must be satisfactory to Alfred's lawyer stop Kleeberg refuses signing this clarification and also refuses my mediation stop. If Kleeberg continues refusing carrying out your instruction you must appoint other representative and advise name."

These utterances were published concerning plaintiff in his professional character as an attorney and not otherwise. If, on their face, they are susceptible in their ordinary meaning of such a construction as would tend to injure him in that capacity, they are libelous *per se* and the complaint, even in the absence of allegation of special

damage, states a cause of action. (*Sanderson* v. *Caldwell*, 45 N. Y. 398; *Purdy* v. *Rochester Printing Co.*, 96 N. Y. 372, 377; *McNamara* v. *Goldan*, 194 N. Y. 315; *O'Connell* v. *Press Pub. Co.*, 214 N. Y. 352; *Sydney* v. *MacFadden Newspaper Pub. Corp.*, 242 N. Y. 208; *Ben-Oliel* v. *Press Pub. Co.*, 251 N. Y. 250, 252.) Inferences to be drawn by a jury from these publications do not depend upon extrinsic facts alleged in the complaint. Although the messages do not state in bald terms that plaintiff is an attorney, the internal evidence is such that no other reasonable interpretation can be placed upon the language. Who except an attorney can be inferred to " advise " and " draw up a different document " or prepare a " paper " for submission to the " lawyer " representing adverse interests, and who except an attorney would harbor a motive to impose " further lawyer expenses " and " cause litigation and large lawyer expenses for everybody? " Such is not the kind of language employed in describing the activities of a lay agent representing one in a capacity other than professional. The mere omission by a third party to inform a client of an attorney that his legal adviser is a member of the bar does not force a court or jury to refuse to draw palpable inferences.

The question, therefore, is whether any of these publications which describe the attitude, motives and actions of an attorney at law bear on their face such implications of unprofessional conduct as tend to injure him in his profession. The message set forth in the first cause of action is not reasonably capable of such a construction. It indicates nothing more than an expression of the writer's inability to convince an attorney of the correctness of his own position which is different from the position assumed by the attorney. When parties are unable to reconcile their differences, favoring a lawsuit to settle the controversy is not to an attorney's discredit. Accordingly, we think that the dismissal of the first cause of action was proper. The other causes of action are, in our

opinion, sufficiently pleaded. The language therein alleged could warrant an inference of fact that defendant intended to and did charge the attorney with fomenting litigation in that he preferred a " fight " rather than a conference which might lead to an amicable settlement, with lack of good faith as an attorney, with making a threat, with breaking off negotiations instead of making efforts to bring about an understanding to save further lawyer's expenses, with acting unfairly in a quarrel between brothers, with drawing up a document with the object of forcing its rejection by the attorney representing his client's brother, and with refusal to comply with his client's wishes. This language is such that a jury could find that it amounts to an untrue charge of numerous infractions of elementary professional ethics and that it tended to bring gross discredit upon the attorney. These are questions of fact and there may be a substantial defense. We decide nothing on this appeal except the adequacy of the plaintiff's pleading.

The judgment should be modified by reversing so much thereof as dismisses the second, third, fourth and fifth causes of action as alleged in the complaint and, as so modified, affirmed, with costs to the appellant in all courts. (See 265 N. Y. 510.)

POUND, Ch. J., CRANE, HUBBS and LOUGHRAN, JJ., concur; LEHMAN and CROUCH, JJ., dissent and vote to affirm.

Judgment accordingly.