(55 Misc. Rep. 572)

QUINN v. SUN PRINTING & PUBLISHING CO.

(Supreme Court, Special Term, Onondaga County. August 20, 1907.)

1. LIBEL—REFERENCE TO PLAINTIFF.
    Defendant published an article charging one C. S. Quinn, of Atlantic Highlands, N. J., with having been asphyxiated in a lodging house in New York under disgraceful circumstances. Defendant's article made no reference to plaintiff, but on the succeeding day another article was published with reference to the same circumstance, stating that a woman had called up the morgue, and said that, judging from the picture of the dead man, she thought he was Rev. Francis Quinn, rector of St. Mary's

Church, Syracuse, who was the plaintiff. *Held* that, while the first article did not refer to plaintiff, the second, taken in connection with the first, was libelous as to him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, § 103.]

2. SAME.

The fact that the articles referred to a person who was dead did not render the publication of the woman's statement the less libelous, as accusing plaintiff of disgraceful conduct.

Action by Francis J. Quinn against the Sun Printing & Publishing Company. On demurrer to the complaint. Overruled.

Welch & Parsons, for plaintiff.

Franklin Bartlett, for defendant.

DE ANGELIS, J. The defendant demurs to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. The plaintiff sets forth in his complaint two articles published in the defendant's newspaper, known as "The Sun," one in its issue of December 14, 1906, and the other in its issue of December 15, 1906, and charges that those articles, in substance, accused him of being asphyxiated at a lodging house in the city of New York in disgraceful circumstances. The plaintiff is the Reverend Francis J. Quinn, pastor of St. Mary's Church, in Syracuse, who has been connected with, or who has officiated at, St. Mary's church in Syracuse for more than 20 years last past. In the article of December 14, 1906, the person asphyxiated was definitely described as Father Charles S. Quinn, of Atlantic Highlands, N. J. His full name was mentioned 12 times, and no possible reference is made to the plaintiff in that article. That article would leave the unmistakable impression upon the mind of the reader that the identity of that priest was definitely determined, and that he was dead. In the last paragraph of the article published on December 15th it can fairly be said that reference was made to the plaintiff. This is the paragraph:

"A woman, who refused to give her name, called up the morgue at 1 o'clock this morning, and said that, judging from a picture of the dead man in a morning paper, she thought he was the Rev. Francis Quinn, who nine years ago was rector of St. Mary's Church, Syracuse. He was born in Texas, she said, where his family, who are wealthy, still reside. Bishop Ludden of Syracuse, and Sister Sennia of St. Vincent's Academy, 120 Madison street, Syracuse, she said, could verify this information."

The learned counsel for the defendant argued two propositions, to wit: First, that, notwithstanding the general allegation that the alleged libelous articles were published of and concerning the plaintiff, yet their contents conclusively proved that the plaintiff was not the priest referred to as found dead; and, second, that, inasmuch as the articles complained of described a person who was dead, they could not be a libel on a person who was then living. For his first proposition the counsel for the defendant relied upon Corr against this same defendant, reported in 177 N. Y. 131, 69 N. E. 288. If the plaintiff had founded his complaint upon the article printed December 14th, the case cited would in my judgment be exactly in point. But in the article of December 15th the defendant published an alleged statement

of an unknown woman, in which she in unmistakable terms referred to the plaintiff as the priest who had been found dead. While it is true that the defendant's newspaper did not indicate that it gave the slightest credence to what this woman said, it did publish what she said, and hence became responsible to the plaintiff in an action of this nature for that statement.

For his second proposition, the counsel cited no authority. I do not think that the fact that the person to whom both articles referred was indisputably dead at a lodging house in the city of New York relieves the defendant from responsibility for publishing the woman's statement that the plaintiff was the person. Generally speaking, and subject to certain qualifications that need not now be mentioned, any publication is a libel which "tends to degrade, injure, or bring a person into contempt and ridicule, or accuses him of crime or other act odious or disgraceful." Suppose the defendant were to publish a statement that A., who lived in Syracuse, was found dead in a brothel in the city of New York; whereas, the person so found was not A. Would not that publication injure A.? When, later, the friends and acquaintances of A. chanced to see him, might not many of them, with that unfortunate propensity to believe what is bad, rather than what is good, about a person, suggest that he was in the brothel, but did not prove to be dead?

I do not think I should sustain the demurrer.

The demurrer is overruled, with costs, with leave to defendant to plead anew upon payment of costs within 20 days.